IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **ERIC DESHON SORRELLS** § | |
| § | |
| V.   § | A-14-CA-004-LY |
| § | |
| **WILLIAM STEPHENS, Director,** § | |
| **Texas Dept. of Criminal Justice-** § | |
| **Correctional Institutions Division** § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1) and Respondent's Answer (Document 8).  Petitioner did not file a response thereto.  Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.     Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 331st Judicial District Court of Travis County, Texas, in cause number D-1-DC-05-200527.  Petitioner was charged by indictment with the offense of aggravated

robbery. A jury found Petitioner guilty of the offense as charged, and on August 17, 2007, he was sentenced to 20 years' imprisonment.

On direct appeal, the Thirteenth Court of Appeals held the evidence was legally insufficient to prove aggravated robbery, reformed the judgment to reflect the conviction of the lesser-included offense of assault by threat and affirmed the judgment as modified; the court then reversed the judgment as to punishment and remanded the case for a new hearing on punishment. Sorrells v. State, No. 13-07-00633-CR, 2009 WL 3766443 (Tex. App. – Corpus Christi 2009, pet. granted). The State filed a petition for discretionary review; and the Texas Court of Criminal Appeals, finding the evidence was legally sufficient to support Petitioner's conviction of aggravated robbery, reversed the appellate court's decision and remanded for further proceedings. Sorrells v. State, 343 S.W.3d 152 (Tex. Crim. App. 2011). On August 25, 2011, on remand, the Thirteenth Court of Appeals affirmed Petitioner's conviction. Sorrells v. State, No. 13-07-00633, 2011 WL 3821288 (Tex. App. – Corpus Christi 2011, pet. ref'd). Petitioner's petition for discretionary review was refused by the Texas Court of Criminal Appeals on January 25, 2012. Sorrells v. State, P.D.R. No. 1467-11.

Petitioner also challenged his conviction in a state application for habeas corpus relief. On December 18, 2013, following remand for an evidentiary hearing, the Court of Criminal Appeals denied Petitioner's application without written order on the findings of the trial court without a hearing. Ex parte Sorrells, Appl. No. 79,164-01 at cover.

**B.      Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below:

In the early morning hours of January 30, 2005, after spending a Saturday night on Austin's Sixth Street, Frances Reynolds waited with a friend on a curb outside of the Spill club ("Spill") for her boyfriend, Nathaniel Rice, who was retrieving her car from a nearby parking lot. Reynolds had consumed a few cherry vodka sours, felt "a little bit" tipsy, and the heels that she wore caused her feet to hurt; she therefore leaned against a silver Mercedes SUV parked on the street. A white male approached Reynolds and told her to "get off the car" because "he knew whose car it was." Reynolds stood up for a moment, then leaned back onto the vehicle. The man walked away and into Spill. Moments later, a black male wearing a "block style" black and gray sweater and a black leather jacket, later identified as Sorrells, emerged from Spill. He approached Reynolds, and told her to "get the f* * * off the car" because she was damaging it. Reynolds turned to see if there were any scratches on the hood; when she turned back around, she saw that Sorrells had a gun. With gun in hand, Sorrells hit Reynolds across the side of the head. Reynolds swung back in "self-defense." Sorrells pushed her, and she pushed back. The events that ensued are best described from the vantage point of each witness.

1. The Altercation

Reynolds testified that shortly after the scuffle between she and Sorrells ensued, her boyfriend, Rice, arrived on the scene. As Rice approached, Sorrells turned, pulled back the slide of the gun, and said, "[D]o you have a problem with me, too?" Rice swung and punched Sorrells, and the two started fighting. A man wearing a blue, "flannel-type" jacket ran up to Rice and punched him. Rice fell to the ground. Reynolds then saw the man in the flannel jacket hold a gun to the back of Rice's head. Reynolds ran to Spill's entrance and asked for someone to call 911, but no one complied. When she turned back to check on Rice, the altercation had ended. Rice had a bloody mouth, a black eye, and a ripped shirt. He told Reynolds that his jewelry had been stolen.

Rice testified that after retrieving Reynolds's car, he drove to the front of Spill and saw three black males standing at arms length from Reynolds. As Rice stepped out of the car, he noticed Reynolds "scuffling, fighting, and arguing" with Sorrells. Rice approached, asking, "[W]hat the h* * *?" At that moment, Sorrells "pulled out a gun and cocked it at [Rice]"; this was the first time that Rice saw the gun. Sorrells pointed the gun at Rice's torso, and Rice "pushed the gun out of the way and swung at Sorrells." Sorrells struck back, hitting Rice with the gun. At that moment, a man wearing a flannel jacket punched Rice on the right side of the head, Rice was knocked to the ground, and "jumped by multiple people." At some point, the beating ceased, and the people hitting him dispersed. Rice became aware that he was no longer wearing his Figaro necklace with a Versace lion medallion, valued at approximately $1,000, or his three to four inch Versace cross embellished with several diamonds, worth approximately $2,200. When police arrived moments later,

3

Rice told them that his jewelry had been stolen. As a result of the altercation, Rice sustained scrapes, bruises, and a busted lip.

Reynolds and Rice's friend, Kevin Fritz, also testified. Fritz had accompanied Rice to the parking lot to retrieve Reynolds's car. As the men drove to the front of Spill, Fritz saw Reynolds arguing with Sorrells. Sorrells hit Reynolds, pulled out a gun, pulled the slide back, and hit Reynolds again. Fritz followed as Rice got out of the car and approached Sorrells. Upon noticing Rice, Sorrells turned and pointed the gun at Rice. Rice took a swing at Sorrells, and then another man came up behind Rice and hit him in the head. A third man joined the fight, and the two men "jumped" Rice. Fritz saw Sorrells point a gun at Rice. Fritz ran up and pushed Sorrells out of the way. The men turned their attention from Rice and began fighting with Fritz. Someone hit Fritz with a gun; after being "dazed" and stumbling for a few seconds, Fritz looked up and saw the three men running into Spill. At some point during the altercation, Fritz noticed Rice's lion medallion necklace on the ground.

Rice's friend, Omar Ponce, testified that he was outside Spill on the night in question and saw Rice arguing with a black male that he later identified as Andre Oliver, the co-defendant in this case. Ponce testified that as he moved towards Rice in an attempt to intervene, Oliver pointed a gun at him. However, on cross-examination, Ponce testified that a man wearing a black leather jacket pointed a gun at him, and that the man in the black leather jacket was the only person that Ponce saw in possession of a gun.

2. The Apprehension
Officer Charles Riley testified that in the early morning hours of January 30, 2005, he was dispatched to an incident outside of Spill. Officer Riley arrived on the scene within twenty or thirty seconds and saw several people in front of Spill; everyone was loud and yelling that "someone had taken something" and "someone had a gun." Officer Riley learned that the gunman, a black male wearing a black leather jacket, had gone inside Spill. Concerned he would have trouble entering Spill, Officer Riley ran down the block, turned the corner and ran into the alley behind Spill. Officer Riley saw three individuals in the otherwise desolate alley. The individuals were about three-quarters of the way down the alley and were walking in the direction opposite Officer Riley. Officer Riley shouted, "Austin police, show me your hands." The individuals continued walking, with their hands in their pockets. Officer Riley quickly walked towards the individuals, continued to identify himself, and asked to see their hands. He also radioed to other officers that three potential suspects were in the alley. One individual, later identified as Rachel Hardeman, turned and looked at Officer Riley, then, while still walking, removed her hand from her jacket pocket and deposited an object into the side of a cardboard recycling receptacle. She then placed her hand back inside her pocket. When additional officers arrived, Officer

Riley directed one to secure the receptacle, and the others assisted Officer Riley in detaining the individuals.

After the individuals were secured, Officer Riley searched the receptacle. Inside, he found "a bunch of boxes" and "a pistol." Officer Riley began his investigation by focusing on Hardeman because she had thrown the gun into the receptacle. Officer Riley noticed that the black leather jacket Hardeman was wearing was too big for her. Inside a pocket of the jacket, Officer Riley located a lion medallion necklace, which was later identified as the one Rice reported stolen. The other individuals detained were both black males. One, later identified as Oliver, wore a blue denim jacket. An empty, collapsible shoulder holster was found in an interior pocket of his jacket. The other man, later identified as Sorrells, wore a black and tan sweater, but was not wearing a jacket. Rice's $2,200 Versace cross was never found.

The officers placed each suspect in a separate patrol car and drove them to the front of Spill. The officers separately asked Reyonlds, Rice, and Fritz if they could identify any of the individuals in the patrol cars. No one identified Hardeman. Officer Brian Green testified that he separately took Reynolds, Rice, and Fritz to the car where Sorrells was seated. Each identified Sorrells as the man who had been wearing a black leather jacket.

On June 14, 2006, Sorrells was indicted by a grand jury for aggravated robbery. Sorrells pleaded not guilty and, on August 14, 2007, was tried with Oliver by jury. After the State's case in chief, Oliver called one witness, and Sorrells called none. The State tendered the charge that was ultimately submitted to the jury. The tendered charge abandoned the first paragraph of the indictment. FN1 Sorrells requested the lesser-included offense of assault, but his request was denied. The jury found Sorrells guilty of aggravated robbery with a deadly weapon, the only offense the jury was instructed on, and assessed punishment at twenty years' imprisonment. This appeal ensued.

> FN1. The first paragraph provided that:
>
> Sorrells ... did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, **intentionally, knowingly, or recklessly cause bodily injury** to Nathaniel Rice by hitting Nathaniel Rice with a hand, and the said Eric Deshon Sorrells did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]
>
> (Emphasis in original).

5

Sorrells v. State, No. 13-07-00633-CR, 2009 WL 3766443 (Tex. App. – Corpus Christi 2009, pet. granted).

C.   **Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1. He received ineffective assistance of trial counsel because counsel did not object to hearsay; and

2. He received ineffective assistance of appellate counsel because counsel did not include meritorious and valid claims on appeal.

D.   **Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

A.   **The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. See Harrington v. Richter, – U.S. –, 131 S. Ct. 770, 783-85 (2011). The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington, 131 S. Ct. at 784.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Id. Following all of the Courts of Appeals' decisions on this question, Harrington concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." Id. (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." Id. And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Id.

As Harrington noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. Id. at 785 (citing 28 U.S.C.

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

Id. at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. Id.

B.   **Ineffective Assistance of Trial Counsel**

In his first ground for relief, Petitioner argues that he was denied effective assistance of trial counsel in that counsel failed to object to hearsay. Petitioner explains hearsay testimony was elicited during trial without objection from a police officer stating that the victim told him that Petitioner had a gun and took the victim's gold necklace worth $1000. Petitioner contends had this testimony been

excluded nothing would have tied Petitioner to the stolen property and he more than likely would have been acquitted. Petitioner denies any strategic reason existed for counsel to not object to this hearsay testimony.

Petitioner raised this same issue in his state application for habeas corpus relief. The state courts rejected the merits of Petitioner's claim. As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claim by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687.

On state habeas review, trial counsel provided his affidavit to the trial court. Counsel averred:

> I did not fail to object. Rather, I made a conscious, strategic choice not to object. On August 14, 2007, during the testimony of the complainant, Nathaniel Rice, the following exchange had occurred between Rice and Jon Evans, the counsel for the co-defendant Andre Oliver.
>
> [CODEFENDANT'S COUNSEL]: *** Do you recall telling the police that the man in the leather jacket had taken your necklaces? Do you recall telling them that?
>
> [RICE]: I don't recall that.
>
> [CODEFENDANT'S COUNSEL]: Do you think that's possible that happened?
>
> [RICE]: It could be possible. Anything could be possible. I was on the ground when it happened.
>
> See Reporter's Record, Volume 3, p. 203. After the State rested and closed on August 15, 2007, the counsel for the defendant called a single witness, Austin Police Office[r] Brian Lloyd. Officer Lloyd had responded to the scene on January 30,

2005, but he had not been called to testify by the State during its case-in-chief. The exchange in question was as follows:

> [CODEFENDANT'S COUNSEL]: Sir, you had occasion to talk to Nathaniel Rice; is that right, sir?
>
> [LLOYD]: I did.
>
> [CODEFENDANT'S COUNSEL]: Now, according to the best of your recollection, these events had just happened; had they not, sir?
>
> [LLOYD]: Yes.
>
> [CODEFENDANT'S COUNSEL]: Now, then, in talking to Nathaniel, Nathaniel told you, did he not, sir, that a black man had produced a gun?
>
> [LLOYD]: Yes.
>
> [CODEFENDANT'S COUNSEL]: That a black man had struck him with a gun?
>
> [LLOYD]: Yes.
>
> [CODEFENDANT'S COUNSEL]: **He described that same black man as taking his gold necklace?**
>
> [LLOYD]: **Yes.**
>
> [CODEFENDANT'S COUNSEL]: He described that black man as wearing a black leather jacket?
>
> [LLOYD]: Yes.

See Reporter's Record, Volume 4, p. 45-6 (emphasis supplied). This entire question and answer exchange between codefendant's counsel and Officer Lloyd was exceedingly brief. The questions were posed and answered at a rapid tempo. Lloyd's string of "yes" replies came without hesitation.

I felt at the time that if I were to object to the question and answer emphasized above in bold, it would have had the equivalent figurative effect of (1) hitting a pause button, (2) alerting the jury to the fact that some damaging information had just been introduced to my client's detriment, and (3) inviting the jury to take a closer look at that damaging information with a magnifying glass. I did

11

not want to attach any further significance to this small slice of testimony. I did not want to bestow any legitimacy upon this information by letting the jury think that I had a substantial reason to be afraid of Lloyd's response. If I had objected on a hearsay basis and the objection had been overruled, I may have preserved the error for appeal, but this would have come at the cost of drawing the jury's attention to the matter. If I had tendered an objection to the question in the split second before Lloyd had spoken his answer aloud, the jury would have sensed that the answer was not favorable to Mr. Sorrells. Even if the court had sustained a hearsay objection and gave an instruction to disregard, the proverbial skunk would have already found its way inside the jury box. An objection would only have had the practical effect of drawing more attention to a question and answer that had passed by quickly, in a matter of seconds.

      I felt that Mr. Sorrells had a solid chance of acquittal on the charge before the jury's consideration. My sole aim at the time was to achieve that result. The case involved a chaotic, late-night physical altercation on Sixth Street in Austin, with the complainant and his friends on one side, and Mr. Sorrells as the main participant on the opposing side. The complainant alleged that two necklaces were stolen from him during a brawl. One of the complainant's necklaces had been recovered, but the other was never accounted for. Most of the actual participants who testified agreed that three black males– including Sorrells– had faced off against them during the melee, but only two black males– Sorrells and Oliver– were apprehended or even identified. The third black male was a total mystery. There was not even the barest description in evidence as to what this man looked like, or what clothing he wore. On the whole, the accounts of the incident given by the complainant and his friends– by way of their testimony, as well as their statements to police that were relayed by officer testimony– were riddled with troubling inconsistencies. In my opinion at the time, there were ample sources of reasonable doubt before the jury as to the guilt of Mr. Sorrells.

      This was not a situation where my best hope was to preserve every appellate point of error possible as a last resort, knowing that conviction of Mr. Sorrells was a certainty. The testimony of Lloyd regarding the necklace was over and done with in an instant. I did not want to draw any more attention to the matter, especially when I knew that the evidentiary portion of the guilt-innocence phase was about to come to a close. Although the panel had been told at the very beginning of voir dire that the jury would not have to work past 1:00 PM on Wednesday, August 15–and that the trial might conclude on Thursday–it seemed to me that at the time Lloyd testified, the jury appeared surprised and possibly relieved that the trial had progressed so rapidly. I felt at the time that by objecting, there was a very real and present danger that I might be alerting the jury to a blip of evidence that may very well have escaped their attention. While I sincerely regret that Mr. Sorrells was

> convicted on my watch, I feel that the split-second decision I made to not object was the best course of action to take under the circumstances I faced at the time.

> Ex parte Sorrells, Appl. No. 79,164-01; Supp. Recd. at 4-8.

On state habeas review, the state court found counsel's affidavit credible. Id. at 15. The court found the presence of the stolen medallion in the jacket worn by Sorrells during the assault was strong circumstantial evidence that he or one of his accomplices had stolen the medallion during the assault, and the evidence would have been sufficient without Lloyd's testimony to show the assault in question was in the course of committing theft. Id. The trial court recommended the denial of the state application. Id. at 16. The Texas Court of Criminal Appeals denied the state application on the findings of the trial court.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**B.     Ineffective Assistance of Appellate Counsel**

In his second ground for relief, Petitioner argues appellate counsel was ineffective because he failed to include meritorious and valid claims for appeal. Specifically, Petitioner contends appellate counsel should have argued Petitioner was entitled to a lesser-included offense instruction on assault by threat, which is a lesser-included offense of aggravated robbery by threat and which issue was preserved for appeal by trial counsel. Petitioner complains appellate counsel instead

sought reversal based on two unrequested and inapplicable instructions for "bodily injury" assault and "offensive contact" assault, neither of which are lesser-included offenses.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. Const. amend. VI, XIV; Evitts v. Lucey, 469 U.S. 387, 393-95, (1985); Strickland, 466 U.S. at 688; Anders v. California, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in Strickland, 466 U.S. at 668. See also Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001) (applying the Strickland standard to ineffective assistance claims against appellate counsel). As explained earlier, to establish ineffective assistance of counsel Petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. Strickland, 466 U.S. at 688. To show prejudice, a petitioner must show that, but for appellate counsel's performance, there is a reasonable probability he would have prevailed on appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000).

Petitioner's appellate counsel provided his affidavit to the state habeas court. Due to the passage of time, counsel could not recall why he failed to include the proposed error in his appellate brief. Ex parte Sorrells, Appl. No. 79,164-01; Supp. Recd. at 10. Counsel suggested it could have been the result of an editing error or he could have purposefully waived it. Id. He noted he didn't think the error was very well preserved. Id. In considering Petitioner's claim, the state habeas court concluded:

> No instruction on simple assault was required because all of the witnesses who testified about the assault on Rice also indicated that a firearm was used in the assault. Therefore, the only lesser included offense raised by the evidence was aggravated assault, not simple assault, and appellate counsel's omission did not prejudice applicant. A charge on a lesser included offense is not required unless the

evidence supports a finding that the defendant, if guilty, is guilty only of that offense. There was no evidence that a firearm was not used as part of the threat, so did not support a theory that he was guilty only of simple assault.

Id. at 15.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. As explained by the state court, the evidence did not support an instruction for simple assault.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 6th day of June, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE